1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| ENRIQUE JOSE JURADO CARBONELL, | Case No. EDCV 15-968 JC |
| Plaintiff, | MEMORANDUM OPINION AND ORDER OF REMAND |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

18      **I.      SUMMARY**

19            On May 18, 2015, Enrique Jose Jurado Carbonell ("plaintiff") filed a

20      Complaint seeking review of the Commissioner of Social Security's denial of

21      plaintiff's application for benefits.  The parties have consented to proceed before

22      the undersigned United States Magistrate Judge.

23            This matter is before the Court on the parties' cross motions for summary

24      judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

25      Court has taken both motions under submission without oral argument.  See Fed.

26      R. Civ. P. 78; L.R. 7-15; May 20, 2015 Case Management Order ¶ 5.

27      ///

28      ///

1

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is REVERSED AND REMANDED for further proceedings
3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5          **DECISION**

6          On October 20, 2011, plaintiff filed an application for Disability Insurance
7    Benefits.  (Administrative Record ("AR") 157).  Plaintiff asserted that he became
8    disabled on December 1, 2008, due to quintuple bypass surgery and coronary
9    artery disease, ischemia in the inferior wall segment, hypertension, diabetes,
10   depression, anxiety, loss of sensation in left-hand, chronic back pain, and
11   neuropathy.  (AR 193).  The Administrative Law Judge ("ALJ") examined the
12   medical record and heard testimony from plaintiff (who was represented by
13   counsel) and vocational and medical experts on July 30, 2013.  (AR 42-70).

14         On August 23, 2013, the ALJ determined that plaintiff was not disabled
15   through December 31, 2008 (*i.e.*, the "date last insured").  (AR 19-28).
16   Specifically, the ALJ found that through the date last insured:  (1) plaintiff
17   suffered from the following severe impairments:  coronary artery disease, diabetes
18   mellitus with lower extremity neuropathy, hypertension, degenerative disc disease
19   of the lower back, sleep apnea, anxiety, and depression (AR 21); (2) plaintiff's
20   impairments, considered singly or in combination, did not meet or medically equal
21   a listed impairment (AR 22); (3) plaintiff retained the residual functional capacity
22   to perform medium work (20 C.F.R. §§ 404.1567(c)) with additional limitations[1]

---

25   [1]The ALJ determined that plaintiff:  (i) could lift and carry 50 pounds occasionally and 25
26   pounds frequently; (ii) could stand and walk four hours in an eight-hour work day with a sit/stand
     option; (iii) could sit six hours in an eight-hour workday; (iv) could frequently climb stairs and
27   ramps, but was precluded from climbing ropes, ladders, and scaffolds; (v) could occasionally
     balance, stoop, kneel, and crawl; (vi) could frequently bend and squat; (vii) could never work at
28   unprotected heights or around moving machinery; (viii) could have occasional exposure to
                                                                              (continued...)

1  (AR 23); (4) plaintiff could not perform any past relevant work (AR 27); (5) there

2  are jobs that exist in significant numbers in the national economy that plaintiff

3  could perform, specifically bench assembler and electronics worker (AR 27-28);

4  and (6) plaintiff's allegations regarding the intensity, persistence, and limiting

5  effects of his subjective symptoms were not entirely credible (AR 23).

6          The Appeals Council denied plaintiff's application for review.  (AR 1).

7  **III.    APPLICABLE LEGAL STANDARDS**

8          **A.    Sequential Evaluation Process**

9          To qualify for disability benefits, a claimant must show that the claimant is

10  unable "to engage in any substantial gainful activity by reason of any medically

11  determinable physical or mental impairment which can be expected to result in

12  death or which has lasted or can be expected to last for a continuous period of not

13  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

15  impairment must render the claimant incapable of performing the work the

16  claimant previously performed and incapable of performing any other substantial

17  gainful employment that exists in the national economy.  Tackett v. Apfel, 180

18  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

19          In assessing whether a claimant is disabled, an ALJ is to follow a five-step

20  sequential evaluation process:

21          (1)    Is the claimant presently engaged in substantial gainful activity?  If

22                 so, the claimant is not disabled.  If not, proceed to step two.

23          (2)    Is the claimant's alleged impairment sufficiently severe to limit

24                 the claimant's ability to work?  If not, the claimant is not

25                 disabled.  If so, proceed to step three.

26  _____

27  (...continued)

28  extreme cold/heat and vibration; (ix) could do frequent manipulation and fingering with the left
    extremity; and (x) was limited to simple tasks with simple work related decisions.  (AR 23).

      (3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

      (4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

      (5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.**    **Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not

///

4

1  rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v.

2  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

3       Substantial evidence is "such relevant evidence as a reasonable mind might

4  accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,

5  401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but

6  less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan,

7  911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence

8  supports a finding, a court must "'consider the record as a whole, weighing both

9  evidence that supports and evidence that detracts from the [Commissioner's]

10  conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

11  (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits

12  must be upheld if the evidence could reasonably support either affirming or

13  reversing the ALJ's decision.  Robbins, 466 F.3d at 882 (a court may not

14  substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see

15  also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more

16  than one rational interpretation, we must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record.") (citation omitted).

18       Even when an ALJ's decision contains error, it must still be affirmed if the

19  error was harmless.  Treichler v. Commissioner of Social Security Administration,

20  775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was

21  inconsequential to the ultimate nondisability determination; or (2) the ALJ's path

22  may reasonably be discerned, even if the ALJ explains the ALJ's decision with

23  less than ideal clarity.  Id. (citation, quotation marks, and internal quotations

24  marks omitted).

25       A reviewing court may not make independent findings based on the

26  evidence before the ALJ to conclude that the ALJ's error was harmless.

27  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted);

28  see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may

1  not use harmless error analysis to affirm decision on ground not invoked by ALJ)

2  (citation omitted).  Where a reviewing court cannot confidently conclude that an

3  error was harmless, a remand for additional investigation or explanation is

4  generally appropriate.  See Marsh, 792 F.3d at 1173 (remanding for additional

5  explanation where ALJ ignored treating doctor's opinion and court not could not

6  confidently conclude ALJ's error was harmless); Treichler, 775 F.3d at 1099-1102

7  (where agency errs in reaching decision to deny benefits and error is not harmless,

8  remand for additional investigation or explanation ordinarily appropriate).

9  **IV.    DISCUSSION**

10          Plaintiff contends that the ALJ inadequately evaluated the credibility of his

11  subjective complaints.  (Plaintiff's Motion at 11-14).  The Court agrees.  As the

12  Court cannot confidently conclude that the ALJ's error was harmless, a remand is

13  warranted.

14          **A.    Pertinent Law**

15          When a claimant provides "objective medical evidence of an underlying

16  impairment which might reasonably produce the pain or other symptoms alleged,"

17  and there is no affirmative finding of malingering, the ALJ may discount the

18  credibility of the claimant's subjective complaints only by "providing specific,

19  clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89,

20  492-93 (citation and internal quotation marks omitted).  This requirement is very

21  difficult to meet.  See Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014)

22  ("The clear and convincing standard is the most demanding required in Social

23  Security cases.") (citation and internal quotation marks omitted).

24          An ALJ's credibility determination must be specific enough to permit a

25  reviewing court to conclude that the ALJ did not arbitrarily discredit the

26  claimant's subjective complaints.  Brown-Hunter, 806 F.3d at 493 (citation and

27  quotation marks omitted).  Consequently, an ALJ must specify the testimony he or

28  she finds not credible, provide "clear and convincing reasons" why the particular

6

1   testimony lacks credibility, and identify the specific evidence which undermines

2   the claimant's subjective complaints.  See, e.g., id. at 489, 493-94 (legal error

3   where ALJ failed to identify claimant's testimony found not credible and failed to

4   "link that testimony to the particular parts of the record supporting her

5   non-credibility determination")  (citing Burrell v. Colvin, 775 F.3d 1133, 1139

6   (9th Cir. 2014)).  "General findings are insufficient[.]"  Id. at 493 (citations and

7   quotation marks omitted).  Nonetheless, if the ALJ's interpretation of the

8   claimant's testimony is reasonable and is supported by substantial evidence, it is

9   not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857

10  (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972

11  (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in

12  the testimony are solely functions of the Commissioner.) (citation omitted).

13      **B.    Analysis**

14      Here, the ALJ did not provide clear and convincing reasons supported by

15  substantial evidence for discounting plaintiff's credibility, and the Court cannot

16  find that the ALJ's error was harmless.

17      First, it does not appear that the ALJ gave much, if any, consideration to

18  plaintiff's hearing testimony regarding subjective symptoms.  See Vincent v.

19  Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide an

20  explanation when he rejects "significant probative evidence") (citation omitted).

21  For example, at the hearing plaintiff testified that, among other things, he could

22  walk only about ½ block and stand for approximately ½ hour, had significant

23  difficulty with squatting and bending due to "severe" pain, had difficulty

24  interacting with other people, and had limiting side effects from his prescription

25  medications (i.e., they had a "sedating" and/or "numbing" effect" which would

26  make plaintiff sleepy and put him "in a fog for a while" mostly in the mornings).

27  (AR 55-64).  Nonetheless, the ALJ's decision exclusively cites to plaintiff's

28  subjective complaints documented in Social Security Disability Reports and

7

1  plaintiff's Function Report.  (AR 23, 26) (citing Exhibits 3E [AR 192-99], 5E [AR

2  205-12], 8E [AR 220-25], 11E [AR 236-42]).  Moreover, contrary to at least some

3  of plaintiff's testimony, the ALJ's residual functional capacity assessment, without

4  explanation, stated that plaintiff could bend and squat "frequently," and did not

5  place any limit on plaintiff's ability to interact with other people.  (AR 23, 26).

6      Second, the ALJ essentially discredited plaintiff's "allegation of disability

7  due to anxiety and depression" due to "inconsistencies."  (AR 26).  For example,

8  the ALJ stated that "[d]espite [plaintiff's] allegation of disability due to anxiety

9  and depression, there is no evidence of on-going psychiatric treatment prior to

10 October 2012."  (AR 26).  A claimant's unexplained failure to seek treatment that

11 is consistent with the alleged severity of subjective symptoms is a proper basis for

12 discrediting a claimant's testimony.  See Molina, 674 F.3d at 1113 (citations

13 omitted).  Here, however, as early as December 2008, multiple treatment notes

14 listed anxiety and/or depression among plaintiff's "active problems" (AR 295,

15 299, 305, 307, 309, 312, 316, 320, 328, 331, 333, 334, 336, 338, 339, 341, 343,

16 346, 348, 349, 352, 355, 359, 362, 365, 367, 370, 374, 376, 379-80, 382-83, 390),

17 documented that plaintiff's treating physicians had conducted several "Psychiatric

18 Exam[s]" and/or a limited mental status examinations in connection with

19 plaintiff's medical visits (AR 296, 300, 306, 325, 363, 371-72, 377, 380, 383, 353-

20 54), noted that physicians repeatedly prescribed, renewed, and/or adjusted the

21 dosage of two different anti-depressant medications for plaintiff, i.e., Paxil[2] and

22 Effexor[3] (AR 307, 333, 342, 348, 351, 372, 375, 381, 384, 390), and consistently

23 listed one or both of the medications among plaintiff's "Current Meds" (AR 296,

24

25      [2]"Paxil (paroxetine) is an antidepressant [used to treat] . . . depression, anxiety, or other
26 disorders."  Paxil, Drugs.com web site, available at http://www.drugs.com/paxil.html.

27      [3]"Effexor (venlafaxine) is an antidepressant in a group of drugs called selective serotonin
   and norepinephrine reuptake inhibitors (SSNRIs)."  Effexor, Drugs.com web site, available at
28 http://www.drugs.com/effexor.html.

300, 309, 312, 317, 321, 329, 335, 337, 344, 356, 360, 366-67, 377; see also AR
346 [January 25, 2011 treatment note that plaintiff "[t]ook Paxil for 2.5-3 years"]).
The ALJ also stated that "[i]n his appeal forms the [plaintiff] admitted that he was
not seeing anyone for his mental conditions."  (AR 26) (citing Exhibits 8E at 2
[AR 221], 11E at 2 [AR 237]).  Such Social Security Disability Report "appeal
forms," however, documented that plaintiff *was* seeing someone "for his mental
conditions" – *i.e.*, Dr. Brian Koffman who purportedly had been treating plaintiff
since the "1980s," in part, for "depression" (AR 222, 237) and had prescribed
Paroxetine (*i.e.*, Paxil) (AR 223, 239).

The ALJ's incorrect characterization of the medical evidence calls into
question the validity of both the ALJ's evaluation of plaintiff's credibility and the
ALJ's decision as a whole.  See, e.g., Regennitter v. Commissioner, 166 F.3d
1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate
characterization of the evidence" cannot support an adverse credibility
determination); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995)
("inaccurate characterizations of the Plaintiff's medical record" found to constitute
reversible error); cf. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ
may not selectively rely on only the portions of record which support non-
disability) (citations omitted).

Third, the ALJ stated that "[plaintiff's] non-compliance aggravated his
hypertension [sic] time to time."  (AR 26).  When assessing credibility, an ALJ
may properly consider a plaintiff's unexplained failure to "follow a prescribed
course of treatment."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).
Nonetheless, substantial evidence does not support discrediting plaintiff on this
basis.  For example, the ALJ stated that "in January 2009, [plaintiff] admitted not
taking his anti-hypertensive medications, which explained elevated blood
pressure."  (AR 26) (citing Exhibit 6 at 91 [AR 385]).  The ALJ's statement,
however, did not convey the full story regarding the pertinent medical evidence.

9

See generally Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").  Specifically, the January 30, 2009 treatment note the ALJ cited actually documented only *one* medical appointment when plaintiff's blood pressure and pulse had been elevated "a little" because plaintiff had not taken his anti-hypertensive medication which had run out "two days" before the appointment (and which plaintiff said he would refill that same day).  (AR 385).  Similarly, the ALJ stated that "in August 2009, the [plaintiff] ran out of atenolol."  (AR 26) (citing Exhibit 6F at 85 [AR 379]).  The August 31, 2009 treatment note, however, documented only one occasion when plaintiff's prescription for atenolol had run out for only one week prior to the particular medical appointment, and the cited note did not specifically link plaintiff's failure to take atenolol during that week with any increase in plaintiff's symptoms.  (AR 379-81).  The ALJ also noted that plaintiff had been "counseled on [the] importance of compliance" at the August 2009 appointment.  (AR 26) (citing Exhibit 6F at 76 [AR 370]).  The treatment note actually stated that plaintiff had been counseled about failing to comply with follow up appointments, not about missing medication (as the ALJ appears to suggest).  (AR 381 ["counselled [sic] pt on importance of compliance with f/u appt."]).  The ALJ also stated that "in January 2010, the [plaintiff] 'misses [sic] blood pressure meds occasionally'" (AR 26) (citing Exhibit 6F at 76 [AR 370]).  That January 5, 2010 treatment record, however, did not indicate that plaintiff's occasional failure to take his blood pressure medication had affected plaintiff's functioning in any significant way.  (AR 370-73).  Moreover, none of the foregoing medical records corroborate the ALJ's lay opinion that plaintiff's lack of compliance with some prescribed medication had, in fact, aggravated plaintiff's hypertension.  (AR 370-73, 379-81, 385).

///

1    Even so, evidence that plaintiff had failed to take his anti-hypertensive

2    medications for two days in January 2009 (but apparently had the prescription

3    refilled promptly), that plaintiff had run out of atenolol one time for a week before

4    another medical appointment in August of 2009, and that around January 2010

5    plaintiff had missed his blood pressure medication an unspecified number of

6    times, is insufficient to meet the demanding standard to show "clear and

7    convincing" reasons for discounting plaintiff's credibility.  Moreover, the ALJ

8    also did no identify the specific testimony he found not credible based on any such

9    alleged non compliance.  See Brown-Hunter, 806 F.3d at 493 ("General findings

10   are insufficient" to reject claimant's testimony) (citation and quotation marks

11   omitted).

12       Fourth, the ALJ discredited plaintiff's alleged "difficulty using his left

13   hand" as inconsistent with plaintiff's statements in a function report that plaintiff

14   "[was] able to make breakfast and lunches, [and] perform light cleaning, laundry,

15   ironing, dusting, washing dishes, and watering plants."  (AR 26) (citing Exhibit 5E

16   at 2-3 [AR 206-07]).  The referenced function report, however, more precisely

17   reflected that plaintiff alleged having difficulty with personal care (i.e., bathing,

18   cutting fingernails on his right hand, and difficulty using buttons, zippers, and

19   laces) due to limitations in his left hand.  (AR 206)  Moreover, the function report

20   noted that plaintiff's ability to do such household chores was very limited – i.e.,

21   plaintiff stated that he would only do "light" cleaning for "1 to 2 hours twice a

22   week," one hour of laundry "three times a week," dishes for "15 minutes" each

23   day, ironing for 30-45 minutes twice weekly, watering plants for 10 minutes every

24   other day, and dusting for one hour once a week – and plaintiff would sometimes

25   require "help" from his wife.  (AR 207, 212)  It also stated that plaintiff would

26   only prepare simple meals and still had "difficulty opening jars and moving heavy

27   pots or pans" (AR 207), and that plaintiff also found it "difficult" to do gardening

28   because he lacked strength and grasp in his left hand and had back pain (AR 209).

11

1    Even assuming that plaintiff retained the ability to carry on certain minimal
2    activities of daily living, the ALJ did not find, nor does the record reflect, that
3    such activities "consume[d] a substantial part of [plaintiff's] day," and thus such
4    evidence does not constitute a clear and convincing reason for discounting
5    plaintiff's credibility.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)
6    (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Similarly, an isolated
7    notation in one treatment note that plaintiff had complained about "upper back and
8    neck pain from lifting heavy furniture" (AR 26) (citing Exhibit 6F at 52 [AR
9    346]), and a notation under the "HPI" (*i.e.*, history of present illness) section of a
10   second treatment note six months later that plaintiff had "hurt [his] lower back"
11   because he had previously "[l]ifted too much [weigh]" (AR 26) (citing Exhibit 6F
12   at 37 [AR 331]) (emphasis added) are not materially inconsistent with plaintiff's
13   allegations of disabling pain.  See Vertigan, 260 F.3d at 1049 ("One does not need
14   to be 'utterly incapacitated' in order to be disabled.") (citation omitted); cf.
15   Reddick, 157 F.3d at 722 ("[D]isability claimants should not be penalized for
16   attempting to lead normal lives in the face of their limitations.") (citations
17   omitted).

18   Defendant asserts that in an Adult Function Report "Plaintiff alleged that he
19   didn't lift things because he did not have a strong grip with his left hand and
20   because his back hurt" (Defendant's Motion at 14-15) (citing AR 212 [Exhibit 5E
21   at 8]), and argues that such statements were "in direct contradiction to the fact that
22   [plaintiff] admitted to lifting heavy objections [sic] – even furniture – on two
23   separate occasions" (Defendant's Motion at 15).  An ALJ may properly discount a
24   plaintiff's credibility due to conflicts between a plaintiff's own statements and
25   conduct.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th
26   Cir.), as amended (1997).  As noted above, however, the record does not support
27   an inference that plaintiff said he to lifted heavy objects on more than a single
28   occasion.  (AR 331, 346).  In addition, plaintiff did not state in his Adult Function

Report that he did not lift anything at all, as defendant suggests, just that weakness in his left hand and back pain "affect[ed]" plaintiff's ability to do "lifting." (AR 210, 212). Even so, while the record may, as defendant suggests (Defendant's Motion at 13-14), contain specific conflicts between plaintiff's statements to his doctors and plaintiff's statements in his Adult Function Report that could impact the credibility of such testimony, the ALJ did not find as much.[4] See Brown-Hunter, 806 F.3d at 492 ("[W]e are constrained to review the reasons the ALJ asserts.") (quoting Connett, 340 F.3d at 874) (quotation marks omitted).

Fifth, as the ALJ observed, the report of a pre-operation clearance examination noted, in part, that plaintiff had "stated he was able to perform regular activities without any limiting symptoms," and that plaintiff had "denied any symptoms from obstructive sleep apnea." (AR 26) (citing Exhibit 6F at 22 [AR 316]). Nonetheless, the ALJ did not clearly link such statements to any specific testimony from plaintiff which the ALJ found particularly lacking in credibility. See Brown-Hunter, 806 F.3d at 493 (citation omitted). Moreover, the fact that the examination was being performed in anticipation of a procedure which a surgeon presumably found medically necessary to address plaintiff's pain and lack of functioning in his left hand (*i.e.*, left hand carpal tunnel release surgery), detracts from the ALJ's apparent suggestion that the above conclusory statements show plaintiff with no "limiting symptoms" at all in his "regular activities."

Sixth, the ALJ suggested that plaintiff's "alleg[ed] disability due to his heart" was less credible essentially because it was not supported by objective medical evidence. (AR 26) (citing Exhibit 6F at 91 [AR 385]). Since the ALJ did not provide any other clear and convincing reason for discounting plaintiff's credibility, however, lack of objective medical evidence to support any such

---

[4]For example, the ALJ did not cite the statement from plaintiff's Adult Function Report which defendant referenced, nor did the ALJ discredit plaintiff based on any conflict between that particular statement and plaintiff's conduct. (AR 26).

1   subjective complaints is insufficient to support the ALJ's credibility determination
2   in this respect.  See Burch, 400 F.3d at 681 (Lack of objective medical evidence to
3   support subjective symptom allegations cannot form the sole basis for discounting
4   pain testimony.).

5          Finally, the Court cannot conclude that the ALJ's errors were harmless.  For
6   example, plaintiff testified, in part, that due to severe pain he could walk only
7   about ½ block, stand for approximately ½ hour, and had significant difficulty with
8   squatting and bending, and that plaintiff also had difficulty interacting with
9   people, and had several limiting side effects from his medication.  (AR 55-64).
10  The vocational expert testified, however, that there would be no work available if
11  plaintiff (or a hypothetical individual with the same characteristics as plaintiff)
12  could not "persist throughout a[] normal eight-hour workday, or a 40 hour
13  workweek" due to additional limitations and/or medication side effects similar to
14  those identified in plaintiff's testimony and by Dr. Santokh Singh, plaintiff's
15  attending psychiatrist.  (AR 68-69).  Accordingly, the Court cannot "confidently
16  conclude that no reasonable ALJ, when fully crediting the [plaintiff's] testimony,
17  could have reached a different disability determination."  Stout, 454 F.3d at 1055-
18  56.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

14

1

## V.    CONCLUSION[5]

2

For the foregoing reasons, the decision of the Commissioner of Social

3 Security is reversed in part, and this matter is remanded for further administrative

4 action consistent with this Opinion.[6]

5

LET JUDGMENT BE ENTERED ACCORDINGLY.

6 DATED:  March 14, 2016

7

8

/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

23

24

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ."  Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (citation and internal quotation marks omitted); see also Connett, 340 F.3d at 876 (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).

25

26

27

28

15